UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THOMAS A. NELSON, JR.,

    Plaintiff,

  v.                                                   Case No. 18-CV-632

SGT BEAHM, et al.,

    Defendants.

---

### DECISION AND ORDER ON PLAINTIFF'S MOTIONS AND SCREENING PLAINTIFF'S COMPLAINT

---

Thomas A. Nelson, Jr., who is representing himself, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. (Docket # 1) He also filed a motion seeking leave to proceed without prepayment of the filing fee (docket # 2), a motion to transfer to a new institution (docket # 7), and a motion for a temporary restraining order (docket # 8). Nelson later filed a proposed amended complaint. (Docket # 9)

Federal Rule of Civil Procedure 15(a) allows a party to amend its complaint "once as a matter of course" without leave of the court. Nelson's amended complaint takes the place of his initial complaint to become the operative complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). I , therefore, address Nelson's motions and screen his amended complaint.

    1.   *Motion for Leave to Proceed without Prepayment of the Filing Fee*

The Prison Litigation Reform Act applies to this case because Nelson was incarcerated when he filed his complaint. 28 U.S.C. § 1915. That law allows a court to give

an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the civil case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id*.

On April 23, 2018, I ordered Nelson to pay an initial partial filing fee of $9.05. Docket # 6. Nelson paid that fee on April 30, 2018. Therefore, I will grant his motion for leave to proceed without prepayment of the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2. *Screening of the Complaint*

Federal law requires that I screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion of a complaint if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

To proceed under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was

acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I will give a pro se plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In this case, at all times relevant, Nelson was an inmate at the Waupun Correctional Institution (WCI). He asserts several different factual allegations for which he ultimately seeks injunctive relief and compensatory and punitive damages.

2.1. *Observation Status – Excessive Force*

Nelson alleges that on December 20, 2017, he informed the third shift correctional officer that he was having suicide thoughts. Nelson was then taken from the general population to restrictive housing to be placed on observation status.

Upon arriving to the restrictive housing unit (RHU) and after telling a superintendent there about his suicidal ideations, Nelson was strip searched by defendant CO Koontz. Nelson states he was told that the strip search was "a requirement for all inmates entering RHU from general population." Docket # 26, ¶ 36.

After the search, Nelson was placed in an observation cell where he was monitored by cameras at all times and also by staff checks every fifteen minutes.

The following day, Nelson met with defendant Torria Van Buren, a licensed psychologist. He explained to defendant Van Buren his "emotional, physical, and mental distress." *Id*. ¶ 39. Defendant Van Buren, nevertheless, had Nelson removed from observation status.

3

When defendant CO Keske came to escort Nelson back to the general population, he informed Nelson that he would again have to conduct a strip search. After the search and defendant CO Keske had escorted Nelson to the front vestibule of the RHU and uncuffed his hands, Nelson "opened hand pushed CO Keske in the face." *Id*., ¶ 48. Nelson then put his hands back in a submissive position. Defendant CO Keske re-cuffed Nelson and locked him in a strip cell cage.

Approximately five minutes later, defendant Sgt. Beahm removed Nelson from the strip search cell. He and defendant CO Son Tag held Nelson by his wrists near the RHU clothing shelf and simultaneously twisted his wrists "in abnormal positions." *Id*., ¶ 54. Nelson screamed out in pain specifically regarding his disabled left wrist. Although he asked for medical treatment, he recanted his request after the officers began twisting his wrists more and "saying something in the form of 'Is this the hand you assaulted CO Keske with?'" among other things. *Id*. ¶ 56.

While this was occurring, other staff members cut off Nelson's clothing off leaving him exposed in front of another inmate; CO Schmelcer, a female correctional officer; Captain Bauer; and a large number of other correctional officers. Nelson was then strip searched in front of these individuals by "Captain Bauer, Sgt. Beahm, CO Son Tag, and CO Schmelcer." *Id*., ¶ 65.

After the search, Nelson was escorted back to an observation cell to be place on control status by defendants Sgt. Beahm and CO Schmelcer. During the escort, defendant Sgt. Beahm "placed his thumbs on the pressure points of [Nelson's] neck, and used his palms to cut off [his] air." *Id*., ¶ 62. He also yanked Nelson's head back several times before they got to the cell.

Sometime thereafter, Nelson informed defendants Warden Brian Foster, Director Tony Meli, Institution Complaint Examiner J. MuenChow, Corrections Complaint Examiner B. Hompe, Captain Tritt, Captain Larson, Office of the Secretary C. O'Donnell, and Van Buren—assumedly by letter—of the incident. He also included a threat to spread personal information of an unnamed correctional officer to "defend [himself] from this ongoing abuse" and a request to be transferred for his safety. *Id.*, ¶ 68. Nelson received no response.

Nelson claims that either later that day or the next day, defendant CO Demmer came to his observation cell door and stated "you hit the weakest CO in Waupun. We're going to have some fun with you, breathing is a past tense." *Id.*, ¶ 77.

2.2. *Food Tray*

Nelson alleges that on January 8, 2018, defendant CO Demmer passed him a breakfast tray with "what [he] believed to be saliva on [his] jelly." *Id.*, ¶ 79. When it was time for tray pickup, Nelson refuse to turn in his tray and asked to speak with a superintendent. Defendant CO Demmer denied his request.

Defendant Sgt. Beahm later came to Nelson's cell door. After Nelson explained to him what had happened, defendant Sgt. Beahm responded "you will not be eating lunch" and walked away. *Id.*, ¶ 81.

Subsequently, Nelson did not receive any lunch. He later spoke with defendant L.T. Sanchez and again explained what had occurred. After looking at the breakfast tray, defendant L.T. Sanchez stated "that's not saliva and then walked away quickly." *Id.*, ¶ 83.

A few weeks later, Nelson was given forty days of loss recreation by defendant Captain Westra.

*2.3. Segregation Time*

Nelson alleges that from January 8, 2018, through May 8, 2018, he was serving disciplinary segregation time. However, he was prevented from advancing "in step level system in RHU for unspecified reasons, a conduct report, and in retaliation for a physical altercation" with another correctional officer in December. *Id*. ¶ 88. He states he was thus prevented from obtaining his electronics, canteen, or making any phone calls. And after he informed defendants CPS Ashworth and Warden Brian Foster of this, nothing was done.

*2.4. Sexual harassment*

Nelson alleges that on January 23, 2018, he was sexually harassed by defendant CO Longmoore. Nelson states that during p.m. medication pass out, "CO Longmore drop[ped] [Nelson's] medication in [Nelson's] hand, extended his index finger, and began to [stroke] [Nelson's] right thumb." *Id*., ¶ 91. After Nelson exclaimed in protest, defendant CO Longmoore began to walk away. Nelson then yelled that he would write defendant CO Longmoore up. Defendant CO Longmoore purportedly returned to Nelson's cell and "gave [Nelson] an odd look gesturing to [him] to keep quiet." *Id*.

*2.5. Cell Search and Seizure*

Nelson alleges that at some time in February 2018, his legal work regarding his underlying criminal case went missing from his cell. He alleges that the CO's conduct unreasonable searches and seizures by entering his cell whenever he leaves, reading everything he writes about his case, and taking his paperwork.

*2.6. Folder and Observation Status*

Nelson alleges that on March 6, 2018, he was escorted to his PRC meeting by CO Stepenson (not a defendant). After the meeting, as he was being escorted back to his cell by

defendant CO Jones, defendant Sgt. Beahm approached them and told Nelson that he would be receiving a conduct report for the comments he had made during his PRC meeting and that he would be placed on two-man restriction.

Defendant CO Jones then walked Nelson to the RHU strip cell cage and placed him in ankle shackles. After defendant CO Dorn arrived to be the second officer helping with the escort, the officers again began to escort Nelson to his cell.

At some point, Nelson's folder containing copies of all of the complaints he had submitted against the defendants, which he carried with him at all times and was holding at that time, was ripped from his hands. Defendants CO Dorn and CO Jones were simultaneously violently twisting Nelson's wrists in abnormal positions, as the other officer took Nelson's folder. Although unsure, Nelson asserts that it was defendant Sgt. Beahm that took the folder.

The officers then tilted Nelson's head back and walked him backward down the hallway, down the stairs, and to the RHU strip cell cage one.

Defendant CO Dorn then covered Nelson's mouth and nose preventing Nelson from not only calling out for "the white shirts" but also breathing. *Id.*, ¶ 102. Defendant CO Dorn continued this action for several approximately forty-five second intervals. Nelson informed defendant CO Dorn that he could not breathe during the interval breaks. But defendant CO Dorn merely accused Nelson of spitting and made him put a spit mask on.

Defendant Captain Tritt then had Nelson take off his clothes, and Nelson was strip searched. He was given a gown instead of a kilt to put on "because [he was] compliant." *Id.*, ¶ 106. Nelson was escorted to and placed on observation status in an observation cell.

7

Because there were feces on the wall in that cell, Nelson complained. However, he was told that the brown composition on the wall was not feces but glue.

Nelson also requested medical attention because he noticed his "wrists were red, cut, and swollen." *Id.*, ¶ 108. He was denied his request for treatment six times at minimum. Nelson also states that he showed his wounds to other officers as they passed his cell, only to be ignored.

Nelson was removed from observation a couple of hours later by defendant Captain Tritt. Defendant Captain Tritt informed Nelson that he had reviewed the camera footage from the incident and determined that Nelson had "slightly turned [his] head and that's why they did what they did." *Id.*, ¶ 110. Nelson denies making any provoking movement but states that if such a movement had occurred then it was his human response to his folder being snatched from his hands. Nelson, nevertheless, later received a conduct report for the incident.

Nelson also states that when he returned to his cell, he wrote HSU a number of times regarding his wrist injury, but did not receive any medical treatment.

A hearing was held on the conduct report, but he was not able to attend. This was due to defendant CO Luneburg coming to his cell purporting to take him to HSU for his daily hunger strike vitals check when in fact he was actually taking Nelson to the conduct report hearing. Nelson had refused to go because defendant CO Luneburg was attempting to put him in two man restrictions, which Nelson did not want. Thus, Nelson missed the hearing, and defendant Captain Westra issued him 120-day disciplinary separation.

*2.7. Two Man Escort*

Nelson alleges that from March 17, 2018 through April 3, 2018, he was placed on two-man restriction by defendant CO Dorn without authorization from a supervisor or security director. Nelson states that daily he was forced to come out of his room in ankle shackles and be "two-man" escorted to his hunger strike vitals check. *Id.*, ¶ 122. He further alleges that defendants Captain Tritt and CPS Ashworth failed to protect him from this cruel and unusual punishment.

*2.8. Medical Care – Vitals Check*

Nelson alleges that he initiated a hunger strike "due to the abuse from correctional officers, constant harassment, and doing things to [his] food." *Id.*, ¶ 125. Because of this strike, he was required to go to HSU daily for hunger strike vitals check.

On March 16, 2018, during his vitals check, defendant CO Gripentroy inaccurately relayed Nelson's weight to defendant Nurse Taplin. Thereafter, Nelson states that defendants Nurse Taplin and Nurse Robert purposely recorded the wrong weight for Nelson to harass him. Further, defendant Nurse Roberts purportedly allowed Nelson's blood sugar level to drop without providing him any care.

*2.9. Medical Care – Blood drawing*

Nelson alleges that on March 20, 2018, defendant Nurse Practitioner Tapio attempted to draw blood from Nelson's disabled arm while Nelson's hands were still cuffed behind his back. The attempt was unsuccessful and "caused pain, bruising, [swelling], and a scar." *Id.*, ¶ 131. Once his hands were re-cuffed in front of him, defendant Nurse Practitioner Tapio was able to successfully draw blood.

*2.10. Excessive Force*

Nelson alleges that on April 2, 2018, after he was returned to his cell from having his daily hunger strike vitals check, defendant CO Dorn assaulted him. Nelson states that after he was unshackled and had stepped into his cell, defendant CO Dorn stepped in behind him, pressed his forearm up against Nelson's back, and slammed Nelson's "chest, fact, cheek, and chin up against the wall." *Id.*, ¶ 139. He also purportedly "used his knee to press up against [Nelson's] leg." Defendant CO Dorn then stepped out of Nelson's cell and closed the door.

After, Nelson placed his hands out the trap door to have his cuffs removed by defendant CO Gripentroy and yelled he would tell on defendant CO Dorn. As defendant CO Gripentroy was uncuffing Nelson, defendant CO Dorn yelled for Nelson to put both of his hands on the trap door. Nelson states he complied with the order, but defendant CO Dorn still reached over defendant CO Gripentroy, grabbed Nelson's right wrist, and pulled Nelson's arm violently in an upward motion against the protruding lock. This caused Nelson to suffer "excruciating pain." *Id.*, ¶ 141.

Later that same day, at different periods, Nelson showed defendants CO Demmer and CO Neopold his injuries from defendant CO Dorn's actions. The officers, however, ignored Nelson and his requests for medical treatment. Nelson also yelled to defendant CO Rosenthal and Sgt. Mongey (not a defendant) at different times for medical treatment regarding his injuries. They also ignored him.

At some point, Sgt. Mongey came to Nelson's cell and told him that defendants Captain Tritt and CPS Ashworth wanted to see him. After Sgt. Mongey escorted Nelson to a strip cell cage to speak with them, Nelson explained the incident to defendants Captain

Tritt and CPS Ashworth and showed them his injuries. Defendant Captain Tritt took pictures of the wounds.

Defendant CO Keske then escorted Nelson to HSU to be seen by Dr. Manlove (not a defendant). Once there, Dr. Manlove wanted Nelson cuffed in the front and not the back for the examination. Defendant CO Keske refused. Dr. Manlove, nevertheless, "ordered [Nelson] pain meds, ice, x-rays, and to be seen for a follow-up." *Id.*, ¶ 148. Nelson was then escorted back to his cell.

Nelson asserts that he wrote to defendant Warden Brian Foster "and informed him as [he had] been informing all year about the ongoing abuse." *Id.*, ¶ 149. Nelson "requested to be transferred to another institution for his safety." *Id.* Although Nelson alleges the aforementioned incident happened on April 2, Nelson confusingly states "[he] wrote this letter on March 13, 2018, and twenty days later on April 2, 2018, [he] get[s] hurt by this guard." *Id.*

    3.    *Analysis*

Rule 18(a) provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Under this rule, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The Seventh Circuit instructs that under the controlling principle of Rule 18(a) of Federal Rules of Civil Procedure "[u]nrelated claims against different defendants belong in different suits" so as to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. *Id* at 607.

Additionally under Fed. R. Civ. P. 20, joinder of multiple defendants into one action is proper only if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.". Moreover, the court in *George* reminded district courts that Rule 20 of the Federal Rules of Civil Procedure, applies as much to prisoner cases as it does to any other case. *Id*.

Here, in attempting to improperly bring nine unrelated claims against multiple defendants in a single case, Nelson violates both rules. Indeed, Nelson takes effort to number his various claims prior to elucidating the various allegations. His first claim asserts an Eighth Amendment policy claim regarding WCI's strip search policy; an Eighth Amendment claim of an unreasonable group strip search against defendants Captain Bauer, Sgt. Beahm, Co Son Tag, and CO Schmelcer; and an Eighth Amendment excessive force against defendants Sgt. Beahm and Co Son Tag. However, he then goes on in his subsequent claims to allege Eighth Amendment conditions of confinement claims, deliberate indifference claims, dues process claims and another excessive force claim against other defendants regarding other incidences he experienced.

As instructed by the *George* court, such "buckshot complaints" should be "rejected." *Id*. Nelson will be allowed to file a second amended complaint with only properly related claims. Such amended complaint must be filed on or before **October 3, 2018**. Failure to file a second amended complaint within this time period may result in dismissal of this action. Any unrelated claim not pursued in this case may be brought in a separate action.

Nelson is further advised that because a second amended complaint supersedes any prior complaint, any matters not set forth in the second amended complaint are, in effect,

withdrawn. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). The second amended complaint must bear the docket number assigned to this case and must be labeled "Second Amended Complaint." If Nelson files a second amended complaint, it will become the operative complaint in this action, and I will screen it in accordance with 28 U.S.C. § 1915A.

Nelson is also advised that 42 U.S.C. § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Additionally, the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). Indeed, section 1983 does not create collective or vicarious responsibility. *Id*. Thus, with respect to any claim or claims advanced in Nelson's second amended complaint, he must identify the individual defendants and specify the manner in which their actions, or failure to take action, violated her constitutional rights.

    4.    *Motion to Transfer to a New Institution and Motion for a Temporary Restraining Order*

Nelson has also moved for injunctive relief by way of a transfer to a new institution and an order temporarily restraining various individuals, including defendants CO Keske, CO Son Tag, CO Shmelcer, Van Buren, and Sgt. Beahm, from engaging in acts of harassment against him. However, on August 8, 2018, Nelson filed a notice of change of address stating that he is no longer incarcerated at WCI. He does not indicate that there is a likelihood of his return to WCI. Therefore, his request for injunctive relief will be denied as moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret*, 862

F.2d 148, 150 (7th Cir. 1988)) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'").

**THEREFORE, IT IS ORDERED** that Nelson's motion for leave to proceed without prepayment of the filing fee (Docket # 2) is **GRANTED**.

**IT IS ALSO ORDERED** that Nelson's motion to transfer to a new institution (Docket # 7) and motion for temporary restraining order (Docket #8) are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Nelson file a second amended complaint on or before **October 3, 2018**, which contains only related claims as described in this order.

**IT IS FURTHER ORDERED** that if Nelson does not file a second amended complaint by **October 3, 2018,** that complies with the requirements of Rules 18 and 20, Federal Rules of Civil Procedure, this action will be dismissed for failure to prosecute.

**IT IS FURTHER ORDERED** that the agency having custody of Nelson shall collect from his institution trust account the $340.95 balance of the filing fee by collecting monthly payments from Nelson's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Nelson is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with Nelson's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Nelson is confined;

**IT IS FURTHER ORDERED** that Nelson shall mail all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the Nelson that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 30th day of August, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge